# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BRANDON DEMARLO MONGHUR,<br>aka Brandon Moungher & "Lil Red,"<br><br>　　　　Defendant. | 2:07-cr-0118-PMP-LRL<br><br>**MOTION TO SUPPRESS (#13)** |

## REPORT & RECOMMENDATION

The defendant, Brandon Monghur ("Monghur"), is under indictment on one count of Felony Possession of a Firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The matter before the court is Monghur's Motion to Suppress Evidence (#13), in which he contends that the handgun the Federal Bureau of Investigation ("FBI") seized from Antoinette Wilson's ("Wilson") apartment on May 9, 2007 should be suppressed as evidence because law enforcement did not have valid consent to search the container in which it was found. Monghur also filed an Errata (#15), the government filed a Response (#16), and Monghur filed a Reply (#17).

An evidentiary hearing was conducted on October 2, 2007. At the hearing, FBI Special Agent Gary McCamey ("Agent McCamey") and Detective James Fink of the Las Vegas Metropolitan Police Department testified for the government. No witnesses testified on Monghur's behalf. Thereafter, the government filed a Supplemental Response (#21), to which Monghur filed a Reply to Government's Supplemental Brief (#23). Having considered the motion, errata, opposition, reply, supplement, response, and the testimony offered at the evidentiary hearing, the court submits this Report and Recommendation.

. . .

**THE FACTS**

Based on the testimony adduced at the evidentiary hearing and the exhibits attached to the parties' papers, the court finds the following facts have been established by a preponderance of the evidence. On May 9, 2007, Monghur was taken into custody pursuant to a state warrant related to the alleged attempted murder of Wilson and the battery (domestic violence and child abuse) of Wilson and her children. He was subsequently booked into the Clark County Detention Center ("CCDC"). Later that day, law enforcement went to Wilson's apartment and asked her, among other things, whether Monghur kept a handgun there. Wilson said he did not. She also told the officers that several of her children lived there, although it is unclear exactly how many children she was referring to. A search of the residence was not conducted at that time.

On May 10, 2007, Agent McCamey was alerted to certain telephone calls Monghur made from his jail cell (Monghur was isolated in a "segregated" cell), which had been recorded by the CCDC Intelligence Section.[1] These telephone calls, placed on May 9, 2007, included three calls to an associate, Prince Bousley ("Bousley"), wherein the two discussed an object located in Wilson's apartment. In the first of these conversations, Bousley asked Monghur if the latter had been caught with "the thing" when he was arrested. Monghur said he had not, that he had placed "the thing" in Wilson's apartment. In the second recorded telephone conversation, Bousley again brought up "the thing" and asked Monghur if he would like him to retrieve it from Wilson's residence. Monghur agreed and instructed Bousley to come to the CCDC and pick up the key to Wilson's residence. During the third call, Monghur told Bousley he had placed "the thing" in his bedroom closet; specifically, that it was located in "the green."

After listening to the above telephone calls on May 10, 2007, Agent McCamey deduced that "the thing" Monghur and Bousley were referring to was a handgun. Agent McCamey therefore

---

[1] The CCDC has a telephone system used by inmates to make outside calls. The system has a computer that records conversations of inmates and allows for monitoring of a conversation as a call is made. There is a set of instructions above the telephone that describes how to place a call and warns users that their call may be monitored or recorded.

1 proceeded, along with other law enforcement officers, to Wilson's residence to retrieve it. When they
2 told Wilson they had credible information there was a handgun inside her residence, she responded that
3 she was not aware of one being there, but that if there was one there she wanted it removed. Wilson
4 also told McCamey that Monghur was not named on the lease and stayed at the apartment sporadically.

5     Wilson then took Agent McCamey and his associates to the bedroom Monghur stayed in, which
6 she referred to as her sons' room. She remained outside the bedroom. The officers entered and
7 observed children's clothing and other related items scattered on the floor, as well as children's books
8 and toys on the bed. They also observed an open clothing closet with men's clothes and other men's
9 items inside (no children's or women's items were found there). On the closet shelf, at a height of
10 approximately five feet, was an opaque green plastic storage container. The container, which had a lid
11 on top, was closed but not locked or otherwise bound shut. "Aaron" was written on the side. Next to
12 the closet was a ladder.

13     The officers lowered the container from the shelf and removed its lid. Inside the container they
14 found a revolver and other men's items. (It is not clear whether the officers had to further uncover the
15 revolver or whether it was immediately apparent upon opening the container.) They photographed the
16 revolver inside the container, then removed it.

### DISCUSSION

18     Monghur contends that the revolver should be suppressed because the search of the container
19 was constitutionally flawed. He argues Wilson could not have given effective consent to the container's
20 search due to the fact that she had neither joint use of it, nor apparent authority to consent to its search.
21 Thus, according to Monghur, all fruits of the container's search should be suppressed as evidence. The
22 government responds that Monghur had no expectation of privacy in the container, that exigent
23 circumstances justified its warrantless search, and that Wilson had apparent authority to consent to the
24 container's search.

25     The court first finds Wilson did not have actual authority to consent to a search of the container.
26 "A third party has actual authority to consent to a search of a container if the owner of the container has

expressly authorized the third party to give consent or if the third party has mutual use of the container and joint access to or control over the container." *United States v. Davis*, 332 F.3d 1163, 1169 (9th Cir. 2003) (quoting *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1980)). There is no evidence that Monghur gave Wilson permission or otherwise authorized Wilson to consent to a search of the container. Nor has the government demonstrated that Wilson had mutual use of the container, or joint access to it. The evidence pertaining to the container's location (*i.e.*, inside a closet containing only men's items) suggests that it was used solely by Monghur.

The court also finds that Wilson lacked apparent authority to consent to a search of the container. "Under the apparent authority doctrine, a search is valid if the government proves the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993). There were toys and other children's items scattered about the bedroom, thus suggesting that Wilson necessarily had control over the entirety of the room so as to care for her children. Yet Wilson told the officers that Monghur occasionally stayed in the bedroom and, more importantly, the closet in which the container was found contained items belonging only to an adult male. Agent McCamey also learned from the recorded telephone conversations that Monghur considered the closet to be his. The officers were thus aware that Monghur's belongings, including the container, "were in a specific area separate from [those of other occupants of the residence]." *Davis*, 332 F.3d at 1170. Therefore, they could not have reasonably believed Wilson had the actual authority to consent to the container's search, even though she might have had control over the rest of the bedroom. *See Fultz*, 146 F.3d at 1106 (finding no apparent authority where officers were aware that appellant's boxes were in a specific area and homeowner informed them that the boxes were appellant's).

As to the government's exigency argument, which essentially relies on the public safety exception to the Fourth Amendment, *see New York v. Quarles*, 467 U.S. 649 (1984), such contention fails because the government has made no showing it attempted, in good faith, to secure a warrant; nor has it explained why a telephone warrant was unavailable or impractical. *See Fisher v. City of San Jose*,

4

475 F.3d 1049, 1059 (9th Cir. 2007) ("Where exigency is claimed, we have required the 'government either attempt, in good faith, to secure a warrant, or to present evidence explaining why a telephone warrant was unavailable or impractical'") (quoting *United States v. Alvarez*, 810 F.2d 879, 883 (9th Cir. 1987)).

Notwithstanding the above considerations, this court recommends denial of Monghur's Motion to Suppress Evidence (#13) because Monghur lacked a reasonable expectation of privacy in the subject container. While a person does not forfeit his expectation of privacy with regards to a closed container "merely because the container is located in a place that is not controlled exclusively by the container's owner," *Davis*, 332 F.3d 1163 at 1167 (quoting *Fultz*, 146 F.3d at 1105) (internal quotations omitted), he may relinquish such expectation if he knowingly exposes the contents of the container to third parties. *See Katz v. United States*, 389 U.S. 347, 351 (1986) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *see also Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.").

Posted above the telephone in Monghur's jail cell was a notice that any calls made from this phone may be recorded or monitored. The court finds that by choosing to make calls from that phone, Monghur impliedly consented to the recording of his telephone conversations with Bousley. *See United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) (finding inmate impliedly consented to taping of telephone calls where signs above telephones warning of monitoring and taping, inmate signed consent form, and given prison manual); s*ee also United States v. Peoples*, 1999 U.S. Dist. LEXIS 16212, at *7, *28-29 (W.D. Mo. Sept. 24, 1999) (finding defendant did not have reasonable expectation of privacy in telephone calls made from jail cell to non-inmate where, among other things, warning printed above telephone that telephone conversations may be monitored and/or recorded). During a phone call that he had reason to believe law enforcement officials were listening to, Monghur told Bousley he had hidden a handgun inside a green storage container in his bedroom closet. By his own voluntary act he knowingly assumed the risk that the police would learn where he was hiding his gun. By doing so,

5

Monghur extinguished any reasonable expectation of privacy he might otherwise have had in the contents of the container.[2]

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Monghur's Motion to Suppress Evidence (#13) should be denied.

DATED this 1st day of November, 2007.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] The Government relies on Judge Noonan's concurrence in *United States v. Fay*, 410 F.3d 589, 590-91 (9th Cir. 2005), in arguing that Monghur waived any Fourth Amendment protection he might have otherwise had in the container when he disclosed its contents to Bousley during the recorded telephone calls. (Suppl. (#21) at 2.) However, this court finds *Fay* inapposite. In his concurrence, Judge Noonan stated that, "A person cannot disable his host from bringing criminal proceeds or paraphernalia or weapons to the attention of the police nor invoke the Fourth Amendment when his host seeks to disassociate herself from his criminal conduct by summoning police assistance." *Fay*, 410 F.3d at 591. Monghur never informed his host, Wilson, of the pistol's location. The police told her of their suspicion that a revolver was located in her apartment. Therefore, the right implicated in Judge Noonan's concurrence, that of a householder to summon police assistance, is not at issue here. *See id.*